2017-20082, Dewey Edwards v. DoorDash. You may proceed. Good afternoon, and may it please the Court, Judges. My name is Alfonso Kennard, and I represent the appellant, Dewey Edwards, in this matter, and I'd like to reserve five minutes for rebuttal. I'd like to focus, given the time constraint, on two primary arguments and also additionally address the trial court's ruling on class action availability. First, DoorDash's motion to dismiss and to compel arbitration was premature, as it was based on a mistaken presumption that all of its employees assigned an arbitration provision. We believe that the district court erred by ruling on it and granting it and essentially denying the motion for conditional certification and not taking that up first. There is precedent in the Southern District of Texas to address the issues first of a first filed motion for conditional certification. I don't want to detour you for long, but let me ask you a procedural question. Do you consider this an interlocutory appeal? We do, Judge. Why is that? We believe this is an interlocutory appeal because this is a substantive matter. We cannot proceed forward with this litigation in any context until this matter has been addressed. We're not able to move forward because we're not in a position to have certification granted. The trial court did say at some point they'd revisit. Did the other three opt-in plaintiffs, their cases were not resolved simultaneously with yours, insofar as arbitration was going to be required? That is correct, Judge. Has that since been resolved? We have now filed appeals on those as well, so those would be pending. So a final order, at least an order regarding arbitration as to them has now been entered and there's an appeal from that? That is correct, Judge. You can go back to wherever you were headed. Okay, sure. Thank you. And so we had a motion for conditional certification on file. The Court ultimately decided that under RANA versus International Bank of Commerce stated that the arbitrability of an action is a threshold question and should be decided before a certification motion. Let me tell you why that's distinguishable in this case. First, in RANA, both parties agreed that an arbitration, a valid arbitration agreement existed. That is not the case here. It is in dispute as to whether or not a valid arbitration agreement exists. Second, Mr. RANA in that case did not raise any challenges to the validity of the arbitration policy at any time. Third, in RANA, the parties agreed to a four-step grievance process culminating in binding arbitration. And fourth, Mr. RANA was the sole plaintiff. There was no one else that could possibly be impacted. So we have four factors here that distinguish our matter from the RANA matter that the trial court utilized to make its decision to consider the arbitration component prior to the, to allowing us to seek certification. And I must stress that without knowing who signed arbitration agreements, it's premature to get into that before the certification can happen. The Southern District in multiple cases, including WCA most recently, Odebrecht most recently, has made it very clear that this needs to be addressed first to even know who signed arbitration agreements or not. So at the onset, the court should have looked at the lucidity standard first, which is a very minimal standard, and then decided later on a motion for de-cert if these arbitration agreements would somehow preclude this from moving forward. Beyond that. But that didn't happen here. And there's no way to know who signed arbitration agreements without that being addressed first. So our next point is that the independent contractor agreement is unconscionable. The trial- Are you making an argument just as to the arbitration feature? One of the things the magistrate addressed is this was not an attack on the entire agreement. The unconscionability only went towards the arbitration feature. Do you accept that? We accept that the trial court found that it was procedurally unconscionable. Because you have to have- I'm just trying to distinguish the overall contract from the arbitration aspect. And what the magistrate judge approved by the district judge said is that you're not attacking the entire contract, you're only attacking the arbitration feature. Is that correct? That's right, Judge. And that's why we're here. The trial court erred in not finding the arbitration provision unconscionable. Subsequently, the trial court erred in its finding that there is a class action waiver in play. And that isn't the case either. So part of the issue here is that the district court basically said the arbitrability issue should be decided by an arbitrator. Well, imagine that. So now an arbitrator gets to- Imagine that. And that generally under delegation clauses of arbitration, you say it's invalid or whatever. But there's nothing extraordinary about arbitrators deciding arbitrability. We have a lot of cases, and you've cited them and distinguished them where that's what happens. Well, the notion that an arbitrator can remand back to a federal district court would ultimately end up-could potentially end up flooding the system. But that's really not my main point. Well, if it's your main point, you're attacking well-settled law. There's nothing extraordinary about arbitration deciding arbitrability. And I'm not inferring that there is, Judge. My point is that if-well, first the arbitration issue is subsequent to a certification issue. But when dealing with the unconscionability, we need to look at California law. In this particular instance, the trial court has said California law applies. DoorDash chose California law as the proper law. So we've got to look at California law. What does California law say? California law says that you have to look at these unconscionability factors. First, here, arbitration is in fact unconscionable. And if we look at the Taunton case, it says that the FAA, the Federal Arbitration Act, allows for an invalidation of arbitration agreements because of unconscionability. Then, now we've got to look at the Armendariz factors, which discusses the five factors of unconscionability. The trial court already said in no uncertain terms that this independent contractor agreement at its onset is procedurally unconscionable and states that you have to have both procedural unconscionability as well as substantive unconscionability. Was it procedurally unconscionable for any reason other than it was no real opportunity to negotiate? Or was there some other basis for the procedural unconscionability? Well, the reason it's procedurally I'm talking about what did the magistrate district court find, not your argument. But how far did the magistrate go? The magistrate essentially was of the opinion that because they were not provided, these individuals, with the AAA rules and guidelines, that that was enough for this to be procedurally unconscionable. And that's where they left it without getting into it much further. But the main focus here is now that we know the trial court understands that this is procedurally unconscionable is to look at the substantive unconscionability factors. And we can only do those by looking at the Armendariz factors. That's where the nuts and bolts of this case lie. We have procedural. And the court went into a meaningful recitation as to why not all five factors were met. In fact, just like we have to have both procedural and substantive unconscionability for an arbitration agreement in this instance under California law to be invalid. Similarly, the defendants need to meet all five factors of the unconscionability test that's contained in Armendariz, which is a case subsequent to Concepcion. I'm sure counsel will be addressing Concepcion. Are you arguing that if any single part of the five-factor Armendariz case is not met, that it's substantively unconscionable? I mean, what Armendariz says is you still are looking to whether it permeates the agreement. And I think as far as I can tell from the cases you cited, the district court wasn't wrong. Magistrate proved by district court that one is not — two is not necessarily too many if you find those are not pervasive, do not permeate and vitiate the effect of the agreement. Are you arguing if any single part is found unconscionable under Armendariz, it's got to fall? I thought I just heard. I didn't think that was your argument in the brief. Well, if we look at Armendariz and we take Carlson and we even take Gilo, an arbitration agreement will fail if it in this case fails to contain any of these required elements. And to the extent that it requires these elements are not in place, then, yes, that is our argument. An arbitration agreement can be considered permeated by unconscionability and not severable from its unconscionable parts if it contains more than one unlawful provision. And I'm citing to Carlson v. Home Team, and that's a California case, 2015. But it's not automatically permeated, is it? Well, according to this case, if we have more than one factor that's not met. It could be. It could be permeated, right? Not it is permeated. Well, taking this issue in particular, if we don't have just one, we have two in this particular instance. Correct. It could be. But the case that you're quoting from or citing to, it says it can be permeating if it's more. But it doesn't say that it automatically is, right? You still have to analyze it. Sure. The overarching inquiry is whether the interest of justice would be furthered as within any other case. But in a case like this, we have to give any presumption of doubt to, just like we would under the motion for summary judgment standard, to the plaintiffs here. So to the extent there's any doubt, it needs to be inferred in favor of the plaintiffs at this stage. So just like any other case, in this case to the extent there is any doubt, it has to be given in favor of the plaintiffs. And in this case, we have not one, but two instances that the trial court has acquiesced and acknowledged that there are provisions that aren't met. But the whole point that my colleagues are making is that just because there are two, it's not per se unlawful. Well, under the Carlson case, they found that it was unlawful. And we would argue that in this particular instance, it would also be unlawful and that it would fully permeate. Imagine this. You have the requirement for anyone all over the country. We're in a gig economy. DoorDash is probably one of the biggest suppliers of food that doesn't own a single restaurant, doesn't own a single vehicle to deliver food, all right? And you have folks that are doing this all over the country. And to have them all have to go to Palo Alto, California, to arbitrate these disputes is unconscionable. And the court stated, well, at least if they were aware of the AAA rules, well, these rules were never provided to any of these individuals. So there is meaningful unconscionability. Nothing in this agreement states that DoorDash will take on all the fees. But why didn't it go to Palo Alto? The court fixed that. No, well, the original — Didn't the court fix that? — the original agreement, which we have to look at for purposes of arbitrability, is that they had to go to Palo Alto. They are responsible for fees as well, all right? Subsequent to us filing this lawsuit, DoorDash updated their own ICA. You go in the direction the district judge didn't go. The district judge says your client, the only one that's here now, is subject to the first agreement, and that's the one that applied. She, the magistrate, he, the judge, then went through and agreed that two of them could be severed, two of the provisions that — the two provisions that were unconscionable could be severed, the Palo Alto and the sharing or dividing of fees, of costs. And so it seems to me that this is a — the way the district judge did it, and it seems to me appropriately, not necessarily the right answer, but the appropriate process, is treat this as a contract, which it is. And you can sever unconscionable provisions under California law from a contract. And even though the original contract had these, now, after you've gone to court, those provisions are gone. Well, under California law, it can't be done unilaterally. And in this instance — It's not unilateral. You're in court. And you have had this argument, and the district judge has given you relief on the two provisions that they found, he found, were unconscionable. Well, that applies as to Dewey Edwards, but we have a whole slew of other individuals that haven't been given notice of this case. How many people are here right now? Well, right now we're here for Dewey Edwards, but we're also addressing the fact that the court said that a class action can be waived here, which is inappropriate as well, especially if we are supposed to be in arbitration, which clearly we argue we are not, then that would be an issue for the arbitrator to decide. And here the district court also went further to say that a class action waiver exists, even though there was no opt-in provision per California law. But California law also states that if it's unilateral and it weighs heavily in favor of the employer, that it is unconscionable. That's what happened here. The court didn't do anything. DoorDash went in after we filed this lawsuit and changed it as a result of what was filed. But to look at the issue of arbitrability, period, we still have those two other factors that permeated the original agreement, and that's the agreement that we're looking at now. Any subsequent agreements, we can't even know who had them or who didn't because notice hasn't been given. We don't know who signed those. I see that I'm out of time, and I will be back for my five minutes. Thank you. Thank you very much, counsel. May it please the Court, good afternoon. I'm Rob Friedman for DoorDash. The district court properly considered the issue of arbitrability before considering conditional certification. In fact, the district court had to do that. That's controlled by the Raina case in the Fifth Circuit, and it's not ambiguous. The court, the Fifth Circuit, specifically says prior to addressing conditional certification, we've got to decide the arbitration issue. Additionally, the court has discretion, and they certainly did not abuse their discretion in maintaining an orderly process of resolving arbitration before conditional certification. Friedman. I'm sorry. Does that mean that even if Raina doesn't specifically control because this — the issue is whether there was agreement to — whether arbitration was going to be required at all, whereas Raina, everybody agreed it needed to be arbitrated. That's the argument. If you're saying even if Raina doesn't control in the discretion of the court, it would be okay? Absolutely, Your Honor. And Woodson v. Surgatec and in many other cases the Fifth Circuit has held, obviously, that the district court has the discretion to control its docket. So even if Raina didn't apply — Raina does apply, however, because Raina says that if there is an arbitration agreement — they're conflating two different issues. There is an arbitration agreement. They're arguing for some reason it doesn't apply, but there's no dispute that there is an arbitration here, and the court promptly said we're going to resolve that first. Another issue which Judge Southwick addressed was who else is in this case. There are three other individuals in this case, and they have also been compelled to arbitration because they also have arbitration agreements. There's no evidence in the record that nobody does not have an arbitration  People have arbitration agreements here. The plaintiff certainly does. The three opt-ins do, and the court properly exercises discretion. It properly followed Fifth Circuit precedent. And also, Your Honor, the Genesis health care case from the Supreme Court deals with standing and issues of whether people who don't have standing in court, aren't properly in court, can represent other parties. And here the plaintiff, Mr. Edwards, cannot represent anybody else because he has a binding arbitration agreement and it has a class waiver, and the court properly enforced a class waiver. Getting past the issue of having addressed — Don't go beyond the issue yet. Okay, Your Honor. There were two cases cited by your opponent in his opening brief, one by Judge Gilmore, one by Judge Harmon, district judge, last year, you know, both of them last year. And in both of them, I think the issue was that the only point before the district court was not — were not ones that had to be submitted to arbitration. I forget which one of these opinions I'm citing. But one of them says, while the express language of the FAA permits a Federal court to state proceedings, the Fifth Circuit has held that dismissal is appropriate when all of the issues raised in the district court must be submitted to arbitration. I don't see much made of those two cases. They are mentioned in the opening brief. What should we make of those cases? Are they correct? Is either one of them correct, and how would they apply here? Your Honor, they don't apply here. Both of them are inapplicable. The case we're talking about, which was before Judge Gilmore — Are both of them incorrect? I'm sorry? Are both of them incorrect? They may be correct as to the issues they address, but those cases don't address the same issues. The case before Judge Gilmore had a situation where there were many, many opt-ins who did not have arbitration agreements. That was before the court. So the court recognized that while some individuals had arbitration agreements, some did not. So the court properly determined conditional certification or addressed conditional certification with respect to people who did not have arbitration agreements. Was it divided that way? That decision was made only to those who did not have arbitration agreements? The court held that the individuals with the arbitration agreements could not proceed. They were out of the case. But the court said it allowed for an amendment as to those individuals already part of the case who did not have arbitration agreements. So the distinction was in Reyna, as in this case, we've got a plaintiff, we've got three opt-ins, and they all have arbitration agreements. In the case before Judge Gilmore, there were multiple plaintiffs, party plaintiffs under 216B, who did not have arbitration agreements. In the other case, it doesn't deal with arbitration at all. It deals with the issue of resolving a summary judgment before resolving conditional certification. Again, that may be a correct holding on its face, but here we have something different. We have an arbitration agreement. It's governed by the Federal Arbitration Act, and the Federal Arbitration Act requires that it be enforced as written, and that's exactly what the court did. So Reyna is on point. Back to Judge Elrod's point. Also, the court has the discretion to do it. They certainly have not shown that there was an abuse of discretion in ordering arbitration issues before conditional certification, and there's a good reason for that. It makes sense. The notion that we're going to certify a class on behalf of people who have arbitration agreements and class action waivers and send out a lot of notice and the court sends notice, people can't participate, doesn't make any sense. So we went on those issues, as we say, under Reyna, under discretion, and also under Genesis Healthcare, which would not allow somebody with an arbitration agreement to proceed on behalf of other individuals. What happens in this case if, it probably wouldn't be tomorrow, but before we resolve it, the Supreme Court says that in employment agreements, class waivers are improper? Your Honor, we don't think that's going to happen. We understand it's before the court. We could be getting something any day. It's kind of a shaky Fifth Circuit opinion they're reviewing. Well, it's a great Fifth Circuit opinion. Murphy Oil and the other opinions are the ones that are shaky, Your Honor. Let's say the Supreme Court surprises you. Right. Where does that leave us? Your Honor, they would have to come back at that point, and I would likely imagine they would bring it to the attention of the district. They would go back to the district court and they would come back here. But at this point, controlling Fifth Circuit precedent under Murphy Oil and D.R. We're talking about California law to the extent it applies. The California Supreme Court in Niskanian also held that class action waivers are enforceable. So as the law stands today, the class action waiver is enforceable. Is the Ninth Circuit case they cite, it says the opposite? Was it argued too? Is Murphy in that case? Yeah. It was Morris out of the Ninth Circuit, Epic out of the Seventh Circuit, and then Murphy Oil out of the Fifth Circuit. It was argued, Your Honor, and obviously we have an expectation and a hope, but either way, as the law stands today, the agreement is enforceable. Can you help me with, is this interlocutory? Do you agree with that, that question was asked? Yeah, it's interlocutory appeal. It's an appeal that's justified under Section 16 of the FAA. The part that's a little bit odd about it is the part where they're appealing the issue of the court's placement, the court's order of deciding the arbitration issue before. They've lumped that in with the arbitration issue. It's not completely clear that's the way things usually go. But because it was in the order granting our motion and dismissing, they have lumped that in with the rest of the appeal. So under Section 16 of the Federal Arbitration Act, they can take an appeal on this issue. But this isn't trying to enjoin the arbitration under Section 16 that would make it not appealable. No. They're not trying to. They're trying to make the arbitration group. They're trying to get this Court to reverse the Court's dismissal. If the Court had stayed, it would not have been appealable. But because the Court dismissed under Section 16, it is appealable. As far as the other thing. It's dismissed, but there's still pending claims in the case? There's not pending claims in the case. But at the time that this appeal was taken, there were? They were not, because at the time, when we filed the motion, there was one individual. So it was treated as one, and then subsequently they moved forward. Did these opt-in plaintiffs, and so notifies the Court in the defendant's motion to compel, must be filed 21 days thereafter? What happened? My understanding, Judge Elrod, is that those individuals came in afterwards and after we had already filed our motion to dismiss. So the Court treated this as a motion to dismiss with respect to Mr. Edwards as compared to everyone else. Did it sever him? It didn't sever. I'm hung up on whether it's interlocutory and it's not really a clean vehicle. Well, I think it is a clean vehicle. That's the one area where we do agree, and we agree because the Court dismissed the one plaintiff at the time, and there was only one plaintiff in the plea. My understanding is the other individuals opted in later. They opted in during the process, and subsequently, as my colleague conceded, those individuals now have also been ordered to arbitration. They have their own appeals exactly. Why did the Court need to rule? Help me out. I'm just kind of doing first principles. Why did the Court need to rule about the waiver issue in the order? What waiver issue? The class action. Why didn't the Court rule on that there's an arbitration agreement here and then send it on its way? Because Section 4, first of all, the parties asked that the Court rule on it. It was before the Court properly, and even my colleague agrees that's something the Court should have decided. But it's part of the agreement, and Section 4 requires that courts enforce arbitration agreements as written. That's exactly what the Court did. It is part and parcel of the arbitration agreement. It was not properly challenged. And we asked the Court to enforce it, and as part of its exercise in enforcing the arbitration agreement, it did exactly that. It enforced it. But it just enforced it and sent it on its way and said they can take care of the scope and how it's going to be set up. You mean the arbitrator? Yeah. The arbitrator could have — this could have been a decision. I can imagine many cases where you would argue that these decisions are for the arbitrator and not for the Court. Well, Your Honor, that's exactly what we did argue. We did argue that there is a delegation clause by incorporation of the AAA rules in the Fifth Circuit and Ninth Circuit law. It's crystal clear on that. However, there's a distinction. The delegation provision, and that's approved under the Renner Center West v. Jackson case, which was my case, as a matter of fact. And under Renner Center West v. Jackson, if there's a challenge to the provision, if there's a challenge, that challenge goes. In this case, they did not effectively challenge the class action waiver. As part of the arbitration agreement, we asked it to be enforced. The question I thought you were going to ask and I want to address is this. They're also challenging. In addition to saying it shouldn't have been addressed at all, which is controlled by Fifth Circuit law, they're also saying the arbitration agreement wasn't enforceable. The district court did two things. First, it saw if there was a delegation clause, and there is. And it's incorporated by the AAA rules. That's completely sanctioned, approved by the Fifth Circuit. The court did something interesting. They conflated the issue of validity. And by that I mean the court said, well, if there's a delegation clause, and there is, and I may want to add, the issue of a delegation clause is not in their pleadings. They never challenged it. It's not in the pleadings before this Court. They never challenged the applicability of the delegation clause, nor did they challenge the delegation clause. But the court said, well, there's a delegation clause. It's valid. So now we have to decide under the Kubala standard in the Fifth Circuit whether there's a valid agreement and whether there's a delegation clause. When the court applied valid, the only thing which was required to do was determine whether there was an agreement. It's a very, very narrow standard, and of course there's an agreement. He signed it. But it said it did enforceable. It did enforceable, so we have alternative rulings, which is great in some respects. I say it's great because we've got the court saying delegation clause. The court could have said because there's a delegation clause, the next 25 pages addressing unconscionability, whatnot, goes to the arbitrator, and that's exactly the holding of Renner Center West v. Jackson. The court, however, when it saw validity, it interpreted validity to mean something beyond simply formation, and it went through this analysis. The reason I say that's good is because they have already acknowledged and rejected the very arguments my colleague is making, and as Judge Southwick made or said earlier, and Judge Elrod, I believe you did as well, there are two issues the court found to be substantively unconscionable. And under applicable California Ninth Circuit law, to the extent California law applies, it severed it out, and it severed it out for a very good reason. The agreement was not tainted with illegality. It was as simple as taking out these two provisions, and then you have an enforceable agreement. So the position we have here today, Your Honors, is, first, of course, the court was right to address arbitration. Second, we win on two bases. One, under the delegation clause, which hasn't even been challenged, all these challenges that my colleague talked about and what he thinks is wrong, procedural and substantive unconscionability, that goes to the arbitrator under the delegation clause. But second, because the court underwent a very, very thorough analysis of all of these issues, we have a win in both ways. We have a court saying this is enforceable. Your opposing counsel has said if there is more than one, then it's illegitimate. Is there any case that you can cite us to where there has been more than one, but it's upheld? Absolutely, Your Honor. The Lucas v. Guan case, it's a central district of California case. It severed out the same types of issues. One was prevailing party fees to where it switched the applicability of fees, and also a New Jersey venue. And the great thing about Lucas v. Guan is it cites to the AAA rules, much like our rules, and says this is a good agreement. We're going to sever out a couple of provisions, two provisions, and because the AAA rules are here, we've got a good agreement. Laughlin v. VMware as well, same thing. It's a northern district of California case applying California law. They severed out cost-splitting attorney's fees provisions. And recently, Judge Rosenthal, in a case that applied California law, also severed out unconscionable agreements. So the issue of one versus more, Your Honor, is if there is more than one unconscionable provision as found by the Court, and by the way, we don't think there was anything unconscionable, but assuming for this argument that there are two unconscionable provisions, if there's one, at that point the Court needs to go into further analysis. And it doesn't — there's no hard-and-fast rule, and the courts have said that. There's no per se rule that more than one makes it unconscionable. In fact, many, many cases, cases we've cited to the Court in our briefing, say the opposite. The factors for permeation are, is this tainted with illegality? Is this something that cannot be fixed without writing the whole agreement? So an example would be an agreement that said plaintiff has to arbitrate, the company doesn't. But as far as the issue of two unconscionable terms, the Court exercises discretion to knock those terms out, which leaves us with a perfectly enforceable agreement, which is what they did. Let me ask you about something in the magistrate judge's opinion. After setting out Your Honor's factors, she quotes Sarah Finn from an intermediate California board, I guess, California app. Elimination or interference with any of these five factors makes the arbitration agreement substantively unconscionable. What does that mean? Your Honor. In light of what you just told us. There are five factors in armanduris. In this case, the Court found that one factor was unconscionable, the issue dealing with cost. But, Your Honor, no. The law in California is — What do you make of that quote? I mean, you may be circling back to it, but it seems to me you're going a different direction. What did the intermediate California court mean when it says elimination or interference with any of these five factors, any, makes the arbitration agreement substantively unconscionable? It refers to terms, Your Honor. There's no way to square that language with the countless cases, Your Honor, including from armanduris, which is the leading case out of the California Supreme Court. It doesn't say that. It says that — Well, the rest of the law, and I just didn't know if you had some answer, why the magistrate herself used that quote. Your Honor, I don't know why she used that quote, but I do know that she cited to other cases which gave her the authority to sever out. And, Your Honor, if that were the case, that if any factor in armanduris was found, that automatically the arbitration agreement failed, first of all, that would be incompatible with the FAA, but it would be incompatible with the countless cases we've cited, including recent cases from the Ninth Circuit and whatnot, that have held that the issue is whether or not they could be severed out. And in response to Judge's question, I provided other cases that have, in fact, found that you have to look at these issues, whether it's one, two, or three, and the question is not the number. The question is whether or not the agreement is permeated, and this agreement is not permeated with unconscionability. You have said that the district judge should not have gone further and actually dealt with unconscionability. If we were generally to agree with you, what would be the right result that you think would leave the law in the right channel? Should we say what you just, what I just summarized from your previous comment, that the district judge should have stopped after finding the delegation clause and left for the arbitrator these other points? Is it important to do something like that in this case? Now, Your Honor, I think it's important to affirm this case on both bases. On the one hand, that the delegation clause, finding that there's a delegation clause, means it goes to arbitration. Your Honor, perhaps part of the reason why the judge did that was, as so often happens when defendants file these motions to compel, we made the argument, first and foremost, that the delegation clause applies. Then we made the alternative argument that even if the delegation clause did not apply, even if the court took it upon itself to evaluate all these issues, we still win because this is a good agreement. I want to end by saying I heard my co-counsel, my colleague, excuse me, say that we didn't meet our burden. The burden is crystal clear. Once we've shown there's an arbitration agreement, which we've shown, the burden shifts to them to show some infirmity, and it's a difficult burden. It's not our burden. It's their burden to show it's unconscionable. The district court entertained that challenge in the alternative or in addition and determined that while a couple of provisions may be problematic, again, which we disagree with, it doesn't change the end result. The disagreement is not permeated. So to answer your question very directly, Judge Southwick, the court should affirm the district court on both grounds. Why? What legal basis says we should do that? I think if the court had found to the contrary and said it was unconscionable, you would be here before us arguing that it wasn't the court's place to do so. I would be here arguing, Your Honor, that the court did not properly enforce the delegation clause. Right, and the court shouldn't have ever gone down that road. And I can hear you making that argument. And just because it went down the road and went the way you like down the road, you want us to affirm it and bless it so that you don't have to relitigate it in the arbitration proceeding. That seems inappropriate somehow. So why should we do that? Your Honor, it's an important issue in this circuit for the court to validate the enforceability of the agreement. The district court went ahead and did it. If I was here asking for reversal if we had lost, I would be making the same argument. I would say the court should enforce the delegation clause. Stop there. But I would make the secondary argument as well that even if the court were not to enforce the delegation clause, we win on the merits because the agreement is enforceable. That's the argument we make. It's an argument we routinely make. And going back at least to what the court should do, the court below was also proper enforcing the class action waiver, which is a different issue because it is in the agreement. It has not been challenged correctly. And as part of the agreement under Section 4, it should be enforced as written. Okay. So are you telling us that you would not stand before us to say it was improper if the court had found it was unconscionable? You would not be making the argument to us that the court didn't have the right to declare it unconscionable. I absolutely would be making that argument, 100 percent. But I would also be making the argument that the court got it wrong at unconscionability, much as we did here today. So if we were trying to correspond to existing law and not address this issue, and just how would we write this? We would just say that there is a valid delegation clause and this should go to arbitration and we make no comment about the rest of it? Or, I mean, what would be the normal run-of-the-mill way we would address this? Your Honor, that would certainly not be an inappropriate way to do it, to say the court properly applied the delegation clause and because the delegation clause is valid and I haven't heard anything opposite in the pleas or otherwise, all the court should have done was say the delegation clause is valid and all these challenges they make, make them to the arbitrator. However, Your Honor, because the district court addressed it, we think it's appropriate and it's not unusual and court of appeals cases very often will say while the delegation clause is valid, the district court also enforced the agreement on the merits and we also agree with that. That's not an inappropriate result. Thank you, Your Honors. And you can have two extra minutes if you need them because I took more time with him. Or two fewer minutes if you like. May it please the Court. Let me first start off by saying that as to Cabala, we would argue that that's not applicable because it's Fifth Circuit law and we need to apply Ninth Circuit law. At the onset here, these individuals did not have the ability to opt out. Why did we apply Ninth Circuit law? Well, as to the arbitration issue, that's the chosen law. DoorDash chose California law.  We're looking at California law. So under California law, specifically, it states that in order for an arbitration agreement to be valid, an individual has to have the ability to opt out. So at the very onset, without the ability to opt out, there's nothing in the Fifth     that indicates that at the onset these individuals had the ability to opt out. The arbitration agreement is unenforceable under California law. This was presented to them on a take-it-or-leave basis, which gives an uneven bargaining position to the employer in this instance under California law. That makes an arbitration agreement not enforceable. So we cannot just presume that the arbitration agreement is enforceable. And our argument is that that should have been considered later. But the ---- Well, counsel, you won on that. And the magistrate district judge said that, yes, indeed, this take-it-or-leave it was unconscionable, procedural unconscionability. But then you turn into substantive. Was it take-it-or-leave it in a fairly balanced agreement? And I thought that's the way the analysis went. And I don't see you challenging that that's the right way to do it, just that it was done improperly. And, Judge ---- Wrong answer is given. Well, the Court said that even changing that doesn't render it not unconscionable. The trial court went on and said that. Changing any provisions in that agreement did not change the notion that it was ---- that it would still be unconscionable. Now, at the end of the day, the FAA does not require enforcement if it's unconscionable. If we look under the Federal Arbitration Act, here we have an instance where two out of the five standards were not met. And because these were not met at the onset, it permeated the agreement at the onset. Fixing it later doesn't make it not unconscionable at the onset when this was ---- when this decision was made. And let me also reiterate, at the time that this was being addressed in the district court, we still had opt-ins that were in there. These opt-ins were not dismissed until about two weeks ago, which is why we now have filed appeals on those individuals as well. So those opt-ins still existed. There were still issues in the court at the time that this appeal was filed. Everything hadn't gone away because those folks were still in the trial court at that time. And another point that I want to spend some time addressing is we don't know who does or does not have an arbitration agreement. You have these apps, right? And so as far as we know from what has been presented so far, you have to click on this and it's take it or leave it, right? You either click on this or you can't. The app isn't going to work for you and you're not going to get ---- Tell me what that matters. Tell me what's the point you're going to make on that. Right. So we've got different regional managers in DoorDash that are in different parts of the country. And so until we know for sure, we cannot assume that everyone has had to click on this app in a certain way to be able to get the ability to do deliveries. So we first need to know who actually has clicked on this thing to say that they're ---- Why do we need to know that if we just know your client did and that's who's before us? Why do we need to know all that? Because we had a first file valid motion for conditional certification on file that was just summarily dismissed under the notion that this should be arbitrated and, oh, by the way, you can't have a class action either. So it's an alternative. Let's say you lose on that. Why does it matter? Okay. Why does it matter what the other drivers might have done, so long as we know what Edwards did? Well, because we ---- again, we had a valid motion for conditional certification on file. Well, I said you lose on that. Just take that as your starting point. You lose on that. Why would it then matter? Well, if we lose on that, which I don't see how we could possibly under the ---- I don't either, but just accept that for purposes of argument. Well, if the Court were to find that the Lusardi standard had not been met and conditional certification would not be warranted in this particular instance, well, then we would be taking that issue on appeal and then it wouldn't matter, obviously, if we can't get to the conditional certification phase. From our perspective, what needs to happen is that needs to be addressed first. And then you see who actually does or does not have an arbitration agreement in place. And then the Court ---- then we're looking at substantive agreements. And part of the issue, Judge Elrod, is that there's been multiple variations now of this independent contractor agreement that's basically been shoved down these individuals' throats and we don't know who has what variation or not. So it's ---- That might be very problematic for your class litigation if there's all these different versions. But I don't know that that's a problem for determining whether this case should go to arbitration or not. Well, I think we need to, at the very onset, and because this panel is talking about severability and we don't know that anyone else, we don't know who or who did not become hired and started off with a subsequent version as opposed to someone that only would have been presented or read the original version. So anyone that would have stayed employed during that period of time and may or may not have been forced to acquiesce to a subsequent agreement, again, that would have been done on a take-it-or-leave-it basis as far as we understand. There is no bargaining power there. And under California law, you have to have all the basic contract elements for there to even be an arbitration, for even someone to have to acquiesce to arbitration. Why should we affirm or reverse unconscionability? Why shouldn't we just decide, if we were to decide it was arbitrable and there was a valid arbitration? Well, for the reasons that I've already discussed herein, that's first, as to the Armendariz factors. But additionally— Why should we even reach that? Why is that our province? It is your province here because the application of California law would require—and I see that I'm out of time, but I'd like to— Under California law, it's a requirement that the issue of arbitrability be addressed by a trial court when you are looking at these factors under Armendariz before it goes to an arbitration. This needs—the unconscionability needs to be looked at first under California law. I see that I'm out of time, and I want to thank this panel for its consideration. We ask that the trial court be reversed and that a class action waiver also be reversed. And thank you for your time. Thank you. This case is submitted.